Filed 2/25/14  P. v. Christopher CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D063357 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD240790) |
| CARREA CHRISTOPHER, JR., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Michael T. Smyth, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Carrea Christopher, Jr., of corporal injury on a spouse or cohabitant.  (Pen. Code, § 273.5, subd. (a).)  Christopher admitted he had previously been convicted of the same offense (Pen. Code, § 273.5, subd. (f)(1)), and that he served

three prior prison terms alleged under Penal Code section 667.5, subdivision (b). On appeal, Christopher argues the court abused its discretion by admitting evidence under Evidence Code[1] section 1109 that he had been involved in seven prior incidents of violence or threats against the same victim, Barbara Brown.

FACTS

A. <u>The Charged Offense</u>

Brown had phoned Christopher (with whom she had been in a relationship for over 17 years) to tell him about a possible remodeling job for one of her clients. However, when she later talked to the client and realized it involved work for which Christopher did not have the requisite license, she told the client it would not be a good idea.

On the morning of April 27, 2012, Brown was at a house where she had spent the previous night. She spoke with Christopher on the phone and told him it wasn't the right job for him. Brown was in an upstairs bedroom when Christopher came to the house. Christopher, who was angry, went upstairs and confronted Brown, saying, "Why you want to fuck up my job?" He then pinned her against the wall and struck her in the face several times. At one point, she lost control of her bladder and urinated on herself.

Ms. Green had been asleep in the bedroom before Christopher arrived, but woke when she heard Christopher enter and begin arguing with Brown. She saw Christopher standing over Brown (by then sitting down) cursing at her, but when Brown rose from her

---

1    Further statutory references are to the Evidence Code unless otherwise specified.

2

sitting position, Christopher appeared surprised and twice said, "Are you standing up to me?" before striking her. Green ran downstairs, screaming, "He's beating her up, he's beating her up," and then ran back upstairs to see if she could help Brown. Christopher was leaving the room as Green returned, and Brown appeared to be in a daze. Christopher left in Brown's car.

Ms. Derr, who was downstairs, called police. She gave the phone to Brown, but Brown hung up. San Diego Police Officer Jones responded to the domestic violence call and spoke with Brown. The left side of her jaw was swollen. She told Jones she and Christopher had been arguing about a possible job and that he repeatedly punched her in the head. She told Jones this was what normally happened between them.

B. Prior Domestic Violence

Over defense objection, the court permitted evidence of prior threats and violence by Christopher against Brown. In February 2012, they had a disagreement over Christopher using her car; he made the shape of a gun with his hand and pointed it at her, saying, "Do you really want to fuck with me?" In December 2006, while driving on the freeway, they got into an argument. Christopher threatened to kill her, then punched her in the eye. She reported it to police the next day and the responding officer noted she had significant swelling around her eye. In March 2006, San Diego Police Officer Gomez responded to a call in which the caller reported hearing a fight and a male threatening to kill a female. When Gomez responded, she spoke with Brown, who reported that Christopher hit her several days earlier. In November 2003, San Diego Police Officer Zizzo responded to a call from Brown about domestic violence. Brown told Zizzo

3

Christopher had pushed her against a wall, punched her in the face and mouth two or three times, and threatened to kill her. In April 2003, Christopher and Brown got into an argument and he punched her in the face. In January 2003, San Diego Police Officer Perea responded to a call involving domestic violence at Brown's house. Brown told Perea she and Christopher had been arguing and he punched her in the eye. Perea noticed significant swelling around her eye. Finally, in August 2002, Christopher hit Brown in the head.

C. <u>The Defense</u>

Nellie Rios, Christopher's daughter, testified he was not a violent person. She had lived with Christopher and Brown for one month in 2004. During that time, Brown asked Rios to file a false police report claiming Christopher struck Brown and Rios. Rios testified Christopher never struck her, nor had she seen Christopher strike Brown. She testified Brown was combative and tried to provoke Christopher, and had thrown things at him. However, Rios was not living with them during the times that any of the alleged prior acts of violence occurred.

ANALYSIS

Christopher asserts the trial court abused its discretion by admitting, pursuant to sections 1109 and 352, evidence of Christopher's alleged prior acts of violence and threats against Brown.[2]

---

2    Christopher also asserts section 1109 is unconstitutional. However, he recognizes that in *People v. Falsetta* (1999) 21 Cal.4th 903, 917 (*Falsetta*), our Supreme Court rejected an analogous contention and, under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, we are bound to reject his argument pursuant to *Falsetta*.

4

*Legal Framework*

California's evidentiary rules ordinarily bar admission of evidence of a defendant's prior acts when offered to prove a defendant's conduct on a specific occasion (§ 1101), but section 1109 provides an exception to that general rule. Section 1109 allows introduction of evidence about a defendant's prior acts of domestic violence in a criminal action in which the defendant is accused of an offense involving domestic violence to show the defendant's propensity to commit domestic violence "if the evidence is not inadmissible pursuant to section 352." (§ 1109, subd. (a)(1); *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1024.) Thus, evidence of prior domestic violence may be admitted under section 1109 if its probative value is not substantially outweighed by the probability it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. (*Hoover,* at pp. 1028-1029.) Section 1109 thus constitutes an exception to the general rule that prior bad acts are inadmissible to prove the defendant's propensity to commit the charged offense (see § 1101, subd. (a); *People v. Reyes* (2008) 160 Cal.App.4th 246, 251), and reflects the Legislature's determination that evidence of prior acts of domestic violence is highly relevant, despite its potential prejudicial impact, and is admissible in prosecutions for domestic violence. (*Hoover,* at pp. 1027-1028.)

In determining whether the probative value of the domestic violence evidence outweighs its prejudice, a trial court uses the balancing test and may consider "whether the prior acts of domestic violence were more inflammatory than the charged conduct, the possibility the jury might confuse the prior acts with the charged acts, how recent were

5

the prior acts, and whether the defendant had already been convicted and punished for the prior offense(s)." (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119.)  Also relevant to the trial court's balancing test is "the amount of time involved in introducing and refuting the evidence of uncharged offenses" (*People v. Branch* (2001) 91 Cal.App.4th 274, 282), and whether the defendant "has led a substantially blameless life in the interim." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 534.)[3]

Because section 1109 thus approves admission of prior acts of domestic violence as long as the evidence is not inadmissible under section 352, a court considering admission of this evidence must engage in a balancing of factors for and against admission under section 352.  (*People v. Hoover, supra*, 77 Cal.App.4th at pp. 1028-1029.)  We review a challenge to a trial court's decision to admit the evidence for abuse of discretion.  (*Ibid*.)

*Analysis*

The prosecutor moved to admit the evidence of Christopher's prior violence, noting it involved similar conduct against the same victim, and stating the evidence would require no more than half a day of testimony if he had to call the officers who investigated the prior incidents.  The trial court below engaged in the balancing analysis required by sections 1109 and 352 when it considered whether to admit the challenged

_____

3    Section 1109 also recognizes a distinction based on the vintage of the prior acts of domestic violence: evidence of domestic violence occurring within 10 years of the charged offense is presumptively admissible, while evidence of older incidents of domestic violence is admissible only if the court finds its admission to be in the interests of justice.  (§ 1109, subd. (e).)  Because all of the incidents admitted here were within 10 years of the charged offense, they were presumptively admissible.

evidence. The court ruled the evidence would be admitted, noting all the acts were within 10 years, targeted the same victim, involved similar conduct by Christopher, and would require a limited amount of trial time, and therefore its probative value outweighed any undue prejudice.

Christopher argues the ruling was an abuse of discretion because the evidence was unduly prejudicial. However, none of the prior incidents involved conduct more inflammatory than the charged offense (see *People v. Rucker, supra,* 126 Cal.App.4th at p. 1119), and Christopher does not argue to the contrary. Instead, his sole arguments are (1) the evidence consumed a proportionally inordinate amount of time at trial, and (2) evidence of the charged crime "could have stood on its own--without confusing the issues for the jury with extensive renditions of prior bad acts of domestic violence." However, we disagree that the probative value of the evidence was outweighed by the amount of time required to present the evidence. Certainly, because there were seven separate prior incidents, some amount of time was required to present this evidence, but only 24 pages of trial transcript were required by the prosecution to present the direct testimony of the investigating officers, and Christopher's cross-examination involved fewer than 40 pages, all of which consumed approximately two hours of trial time. We cannot conclude that devoting less than 20 minutes (on average) to each incident with third party witnesses is an undue consumption of the court's resources, particularly when it was probative to rebut the only defense proffered by Christopher, i.e. that he was not a violent person.[4]

---

[4]    There was additional time devoted to this issue in the prosecutor's questions to Brown about the prior incidents, and Christopher's cross-examination of Brown.

Even assuming the court should have excluded some or all of the evidence of other bad acts, we are convinced any error was harmless because it is not reasonably probable the verdict would have been more favorable without the other crimes evidence. (*People v. Ayala* (2000) 23 Cal.4th 225, 271.) Brown testified Christopher struck her in the head numerous times and broke her jaw. Her testimony about the attack was corroborated by an eyewitness (Green) who saw Christopher commit the assault; her testimony about her injuries was corroborated by a police officer who saw her swollen jaw. We are convinced any alleged error was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836.

## DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:

BENKE, Acting P. J.

HALLER, J.

---

However, the direct and cross-examination consumed only 40 pages of transcript, and appears to have been just over one and one-half hours of trial time. We do not conclude this was an undue consumption of court resources.