[No. E020011. Fourth Dist., Div. Two. Jan. 27, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK ANTHONY HOOVER, Defendant and Appellant.

**COUNSEL**

Leslie A. Rose under appointment by the Court of Appeal for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez and Nancy L. Palmieri, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GAUT, J.—**

## 1. *Introduction*

Defendant Mark Anthony Hoover appeals from a judgment against him for enhanced aggravated assault under circumstances involving domestic

violence. (Pen. Code, §§ 245, subd. (a) (1), 12022.7, subd. (d).) Defendant was sentenced to a total prison term of 21 years.

The California Supreme Court granted review of the original published decision in this case. After rendering its decision in *People v. Falsetta* (1999) 21 Cal.4th 903 [89 Cal.Rptr.2d 847, 986 P.2d 182], upholding the constitutionality of Evidence Code section 1108, the court ordered us to vacate our decision and to reconsider it in light of *Falsetta*.

Based on *Falsetta*, we again reject defendant's constitutional challenge to Evidence Code section 1109, which permits the admission of defendant's other acts of domestic violence for the purpose of showing a propensity to commit such crimes. (*People v. Johnson* (2000) 77 Cal.App.4th 410 [91 Cal.Rptr.2d 596].) We also reject defendant's contentions regarding instructional and sentencing error and affirm the judgment.

## 2. *Facts*

Mary Theresa Seals (Seals) testified that she had dated and lived with defendant for several years. On September 18, 1996, she accompanied defendant to a Riverside motel room because she wanted to explain that she was involved in another relationship. Shortly after they entered the room, defendant made a comment about Seals's new boyfriend and then hit her in the nose. When she yelled and tried to leave the room, he grabbed her arms to prevent her. Seals went into the bathroom and screamed for help. Defendant opened the motel room door. Seals then called 911 and defendant left the motel room.

Seals also testified to several other incidents, beginning in 1993, in which defendant hit her in the face or choked her or threatened to kill her. She also told how on one occasion defendant attacked her male companion with a beer bottle. During her testimony, the court briefly admonished the jury that evidence of defendant's past conduct could only be considered for a limited purpose.

On cross-examination and redirect, Seals admitted to being a convicted felon who was often in legal trouble. She also admitted that, in order to help defendant, she had not always told the truth about previous incidents involving him. She acknowledged that, when she testified at the preliminary hearing, she had blamed the subject incident on a dispute involving the motel room's bed sheets. She had also previously testified that she and defendant had shoved one another before he hit her.

On September 18 at 6:30 p.m., Joseph Miera (Miera), a Riverside police officer, responded to a call from the motel regarding a possible assault with

a deadly weapon. When he arrived at the location, Seals was standing outside room 19 holding a bloody towel against her nose. She was crying and had difficulty speaking because of her injury. She told Miera that defendant, her former boyfriend, had punched her in the face. Seals also stated that she and defendant had been drinking beer with some friends. She told defendant that she had met someone else while defendant was in prison and she no longer wanted to date defendant. Defendant became angry, pushed her around, and then hit her. Miera observed fresh blood spattered throughout room 19. Miera arrested defendant, who was in the motel parking lot.

Dr. Greg Michaels, a radiologist, testified that he reviewed Seals's X-rays and observed a multiple fracture of her nasal bones, which had been caused by a blunt trauma.

Defendant did not testify.

### 3. *The Constitutionality of Evidence Code Section 1109*[1]

During trial in January 1997, the prosecution sought to have admitted evidence of other acts of domestic violence by defendant against Seals under section 1101, subdivision (b), as evidence of and relevant to the issues of intent, motive, common scheme or plan, knowledge, and absence of mistake or accident. After the court had admitted such evidence, subject to a preliminary limiting instruction, the prosecutor discovered that section 1109 had recently been enacted. He asked the court to admit the same evidence of defendant's past conduct under that code section. The court did so but did not give the jury any further instruction regarding how to treat evidence of other acts of domestic violence.

The thrust of defendant's appeal is composed of various challenges to section 1109. That code section, enacted in 1996 and effective January 1, 1997, provides that evidence of previous acts of domestic violence may be admitted in a current prosecution for a domestic violence offense. Section 1109 was modeled on section 1108, which provides an identical exception for the admission of other sexual offenses in a prosecution for a sexual offense.[2] In pertinent part, section 1109 states:

"(a) Except as provided in subdivision (e), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence

---

[1] Unless otherwise noted, all statutory references are to the Evidence Code.

[2] De Sanctis, *Bridging the Gap Between the Rules of Evidence and Justice for Victims of Domestic Violence* (1996) 8 Yale J.L. & Feminism 359, 362.

of the defendant's commission of other domestic violence is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352. [¶] . . . [¶]

"(c) This section shall not be construed to limit or preclude the admission or consideration of evidence under any other statute or case law.

"(d) As used in this section, 'domestic violence' has the meaning set forth in Section 13700 of the Penal Code."

Section 1109 thus supplants the usual rule of evidence that evidence of past conduct is not admissible to prove a defendant's conduct on a specified occasion. (§ 1101, subd. (a).)

 Defendant does not deny that he hit Seals in the face. But defendant contends that section 1109 is unconstitutional on its face, and particularly as applied in this case, because it could not be used to show that defendant had the propensity to commit an aggravated assault involving great bodily injury rather than a lesser crime.

 We first observe that it was probably unnecessary for the prosecution to have sought recourse to either section 1101 or section 1109. Even before the enactment of section 1109, the case law held that an uncharged act of domestic violence committed by the same perpetrator against the same victim is admissible: "Where a defendant is charged with a violent crime and has or had a previous relationship with a victim, prior assaults upon the same victim, when offered on disputed issues, e.g., identity, intent, motive, etcetera, are admissible based solely upon the consideration of identical perpetrator and victim without resort to a 'distinctive modus operandi' analysis of other factors." (*People v. Zack* (1986) 184 Cal.App.3d 409, 415 [229 Cal.Rptr. 317].) That rule was not altered by *People v. Ewoldt* (1994) 7 Cal.4th 380 [27 Cal.Rptr.2d 646, 867 P.2d 757], which sets forth the general principles governing the use of character evidence. (*People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1612-1614 [38 Cal.Rptr.2d 868]; *People v. McCray* (1997) 58 Cal.App.4th 159, 171-173 [67 Cal.Rptr.2d 872].) The evidence of defendant's previous attacks on Seals was therefore admissible to show that he intended to inflict great bodily injury upon her on this occasion. (*People v. McCray, supra*, 58 Cal.App.4th at p. 172; Pen. Code, §§ 245, subd. (a) (1), 12022.7, subd. (d).)

 In the alternative, however, the subject evidence was also admissible under section 1109. In determining the constitutionality of section

1109, we adopt the reasoning of the California Supreme Court as put forth in *Falsetta*. In *Falsetta*, the court held that, under section 1108, evidence of two previous rapes by defendant could be used to show his propensity to commit the present rape. Similarly, the history of defendant's acts of domestic violence against Seals could be used to show that, on this occasion, defendant had the propensity to cause Seals great bodily injury.

*Falsetta* noted evidence of prior acts is generally inadmissible to prove conduct, but the Legislature relaxed this constraint with respect to sex offense cases, by enacting section 1108. (*People v. Falsetta, supra,* 21 Cal.4th at p. 911.) ■ *Falsetta* emphasized the difficulty of raising a due process challenge to a state criminal evidence statute: "To prevail on such a constitutional claim, defendant must carry a heavy burden. The courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity. [Citations.] In the due process context, defendant must show that section 1108 offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. [Citations.] The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair. [Citations.]" (*Falsetta, supra,* at pp. 912-913.)

■ The *Falsetta* court noted, however, that "Evidence Code section 1101 has long been subject to far-ranging exceptions, e.g., evidence admitted to show intent and other matters specified in Evidence Code section 1101, subdivision (b) [citation]. *Falsetta* said legislative enactment of a further exception applicable in sex offense cases may not necessarily offend fundamental historical principles. (21 Cal.4th at p. 913.) *Falsetta* said it was unclear whether the rule against 'propensity' evidence in sex offense cases should be deemed a fundamental historical principle of justice, but even if the rule was deemed fundamental from a historical perspective, the court would nonetheless uphold section 1108 because it did not unduly 'offend' those principles, in light of the substantial protections afforded to defendants. (21 Cal.4th at pp. 914-915.)" (*People v. Johnson, supra,* 77 Cal.App.4th at p. 418.)

■ The same reasoning applies in the instant case. As in sex offense cases, the use of character evidence in domestic violence cases is more justified than in a murder case or a forgery case. The legislative history of section 1109,[3] which recognizes the special nature of domestic violence crime, supports this point:

"The propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic

---

[3]Appellant's request for judicial notice, dated October 2, 1997, is granted. (§§ 452, 453.)

violence cases. Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity. Without the propensity inference, the escalating nature of domestic violence is likewise masked. If we fail to address the very essence of domestic violence, we will continue to see cases where perpetrators of this violence will beat their intimate partners, even kill them, and go on to beat or kill the next intimate partner. Since criminal prosecution is one of the few factors which may interrupt the escalating pattern of domestic violence, we must be willing to look at that pattern during the criminal prosecution, or we will miss the opportunity to address this problem at all." (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1876 (1995-1996 Reg. Sess.) June 25, 1996, pp. 3-4.)

"Based on the foregoing, the California Legislature has determined the policy considerations favoring the exclusion of evidence of uncharged domestic violence offenses are outweighed in criminal domestic violence cases by the policy considerations favoring the admission of such evidence." (*People v. Johnson, supra*, 77 Cal.App.4th at p. 420.)

Defendant makes an additional argument that the admission of other acts of domestic violence dilutes the due process requirement of proof beyond a reasonable doubt of every fact necessary to constitute the charged crime. (*In re Winship* (1970) 397 U.S. 358, 364 [90 S.Ct. 1068, 1072, 25 L.Ed.2d 368].) The jury was instructed that the question it was to decide was whether defendant committed the crime charged and that he could be found guilty only if the jury was convinced beyond a reasonable doubt that he committed the crime. (CALJIC No. 2.90 (1994 rev.).) While the admission of evidence of other acts of domestic violence "may have added to the evidence the jury could consider as to defendant's guilt, it did not lessen the prosecution's burden to prove his guilt beyond a reasonable doubt. 'The courts specifically addressing the question of *Winship*'s application to uncharged misconduct uniformly hold that the admission of uncharged misconduct does not undermine *Winship*.' (Imwinkelreid, Uncharged Misconduct Evidence (1986) § 10.11, ch. 10, p. 21, fn. omitted.)" (*People v. Fitch* (1997) 55 Cal.App.4th 172, 182-183 [63 Cal.Rptr.2d 753], italics added.)

Furthermore, section 1109, like section 1108, has a safeguard against the use of other acts of domestic violence "where the admission of such evidence could result in a fundamentally unfair trial. Such evidence is still subject to exclusion under Evidence Code section 352. [Citation.] By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility

that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. (Evid. Code, § 352.) This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. (*Benson v. Honda Motor Co.* (1994) 26 Cal.App.4th 1337, 1348 [32 Cal.Rptr.2d 322].)" (*People v. Fitch, supra,* 55 Cal.App.4th at p. 183.) With this check upon the admission of evidence of other offenses in prosecutions for crimes of domestic violence, section 1109, like section 1108, does not violate the due process clause. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 916-918.)

■ We also conclude that section 1109 did not violate due process as applied. Defendant bases this argument on two points. First, defendant challenges the trial court's balancing determination as made under section 352. We do not agree that the trial court abused its discretion in admitting the evidence under section 1109. Particularly in view of the fact that the subject evidence involved defendant's history of similar conduct against the same victim, the evidence was not unduly inflammatory. The subject evidence was also not remote; its presentation was not confusing or time-consuming. Instead, the evidence was highly relevant and probative of the issues in this case. (*People v. Ewoldt, supra,* 7 Cal.4th at pp. 404-405; *People v. Harris* (1998) 60 Cal.App.4th 727, 737-740 [70 Cal.Rptr.2d 689].)

Second, defendant argues that the jury was confused because it was incorrectly instructed with CALJIC No. 17.01[4] and not instructed at all regarding the use of the evidence permitted under section 1109, although during trial the jury had been given a preliminary limiting instruction based on section 1101.

We agree that the procedures followed in this case were somewhat irregular, due in part to the prosecution's sudden discovery during trial of the newly enacted section 1109. It would certainly have been better if the trial court had explained to the jury that its preliminary limiting instruction was wrong and that the evidence of past conduct could be considered to show that defendant had a present disposition to commit domestic violence offenses. (CALJIC No. 2.50.02.) (*People v. Falsetta, supra,* 21 Cal.4th at pp. 922-924.)

---

[4]The instruction based on CALJIC No. 17.01 provides: "The defendant is accused of having committed the crime of Assault By Means Of Force Likely To Produce Great Bodily Injury in Count I. The prosecution has introduced evidence tending to prove that there is more than one act upon which a conviction on Count I may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts. However, in order to return a verdict of guilty to Count I, all jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts agreed upon be stated in your verdict."

Furthermore, the jury was apparently confused by CALJIC No. 17.01 and its reference to other acts. A question from the jury during deliberations indicated that the jurors initially did not understand that they were not supposed to consider CALJIC No. 17.01 at all. The jury's note to the court said: "17.01 seems to state that all acts presented into evidence may be considered. [¶] Does this mean that if we agree that 'force likely to produce bodily injury,' was used in an incident other than the motel incident (namely, the incident where the plaintiff was struck with a cast) we can find the defendant guilty of Count 1?" The court, with agreement from both counsel, responded tersely and simply to the jury's inquiry, "No." Therefore, we must assume the jury followed the court's instructions.

Since it was ultimately proper for the jury to consider defendant's past conduct as evidence bearing on his present conduct, any errors committed at the trial level were clearly harmless. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 924-925, citing *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Finally, we agree with the People that the proper standard for proving past conduct is by a preponderance of the evidence, not beyond a reasonable doubt, as defendant proposes. (*People v. Falsetta, supra,* 21 Cal.4th at p. 923; Evid. Code, § 115; *People v. Durham* (1969) 70 Cal.2d 171, 187, fn. 15 [74 Cal.Rptr. 262, 449 P.2d 198]; CALJIC No. 2.50.02.) Therefore, the evidence of defendant's past conduct was sufficiently established by the testimony of Seals.

### 4. *Sentencing*

■ Part of defendant's 21-year sentence included the upper term of five years for the great bodily injury enhancement. (Pen. Code, § 12022.7, subd. (d).) Defendant argues that the court did not properly articulate the aggravating circumstances which justified the imposition of the upper term of five years rather than the middle term of four years.

Defendant further denies that he waived the issue for appeal because he did not have a meaningful opportunity to object to the sentence which was imposed. (*People v. Scott* (1994) 9 Cal.4th 331, 356 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) The People contend the issue was waived but, in any case, the court applied the proper aggravating factors.

On the question of waiver, we note that the sentencing hearing took place over a two-day period and that both the prosecution and the defense offered substantial argument as to why defendant should or should not receive the

upper term. We agree with defendant that he did not waive the right to appeal. The trial court was fully apprised of the basis for defendant's objection to the upper term. Therefore, "the principles of *Scott* were satisfied." (*People v. Superior Court* (*Dorsey*) (1996) 50 Cal.App.4th 1216, 1224 [58 Cal.Rptr.2d 165].)

We agree with the People, however, that the aggravating factors identified by the court were sufficient. The factors used by the trial court were located in the probation report and the prosecution's sentencing memorandum. The aggravating factors supporting the enhancement included that the victim was particularly vulnerable and that defendant took advantage of a position of trust or confidence to commit the offense. (Cal. Rules of Court, rule 421(a)(3), (11).) The victim was particularly vulnerable because she was in a state of "acute alcohol intoxication" and because the incident occurred in the confines of a motel room. It is also patently obvious that defendant was able to exploit his intimate relationship with the victim and to induce her to come to the motel room where she would be vulnerable to attack. The factors cited by the court justified sentencing appellant on the enhancement. (*People v. Hall* (1994) 8 Cal.4th 950, 958 [35 Cal.Rptr.2d 432, 883 P.2d 974].)

## 5. *Disposition*

We affirm the judgment against defendant in its entirety.

Hollenhorst, Acting P. J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 26, 2000.