Filed 9/22/15  P. v. Howard CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066738 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS271078) |
| RONNIE WILLIAM HOWARD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Dwayne K. Moring, Judge.  Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Randall D. Einhorn and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant Ronnie Howard guilty of one count of corporal injury to a fellow parent (Pen. Code, § 273.5)[1] and, in a bifurcated proceeding, the court found true Howard had sustained a prior strike conviction within the meaning of sections 667, subdivisions (b) through (i), and 1170.12. The court sentenced Howard to eight years in prison. Howard timely appealed.

I

FACTUAL BACKGROUND

A. Prosecution Evidence

*The Charged Offense*

On the morning of March 17, 2014, the victim of Howard's attack, Ms. Meeks, banged on her neighbor's door and asked if she could use his phone to call police because Howard had tried to strangle her. The neighbor agreed and Meeks, who appeared upset, initially misdialed on her first attempt but then correctly reached the 911 operator on her second attempt. During the 911 call, Meeks told the operator "my baby's father [referring to Howard]--he--he choked me to until I passed out and I'm pregnant." She also told the operator Howard "abused me," and "slam[med her] and stuff," and stated "I had to hop out the window." She also told the operator she had locked the door behind Howard when he went outside and wanted police to come before he escaped. When asked if Howard carried a weapon, Meeks responded, "I think so. I don't know," and said she did not know if he had a gun but had not seen one.

---

1    All further statutory references are to the Penal Code unless otherwise specified.

Chula Vista Police Officer Dominguez was dispatched to Meeks's apartment building and, on arrival, saw Howard's unoccupied car was still parked there. Dominguez contacted Meeks, who was distressed and appeared to have been in an altercation. He asked Meeks what happened, and she told him her boyfriend (Howard) punched her in the face and choked her in her apartment, and she escaped through a window. A few minutes after Dominguez arrived, he was joined by his partner, Agent Sherard. A few minutes later, as they were heading towards Meeks's apartment, they observed Howard on foot and detained and arrested him.

In Meeks's apartment, she initially reiterated to the officers that Howard had attacked her for no reason, but then admitted she had confronted Howard about messages on his phone from another woman. An argument had ensued and Howard then attacked her, including punching her in the face and choking her.

The officers observed Meeks had some bruising or redness to her forehead, above her right eye, and a bruise under her right eye, consistent with being punched in the face. They did not observe any other injuries.

*Prior Domestic Violence*

Over defense objection, Erika Baines (Howard's former girlfriend and mother of two of his children) was permitted to testify Howard had attacked her on several occasions. In a 2009 incident, he slapped her in the face as they drove home and, when they arrived home, he stated, "I'm going to beat your ass" and he proceeded to slap, punch and choke her into unconsciousness. In a 2010 incident, when Baines was

3

pregnant, they argued on the phone about her staying at her parents. Howard returned home about five minutes later and proceeded to hit her. He also grabbed a knife and cut her twice, and said, "If I have to talk to you about this again, I'm going to kill you." In 2011, when Baines was pregnant with their second child, Howard slapped her face and told her to leave. However, as she was preparing to leave, he attacked her again, hitting and kicking her, and throwing her halfway downstairs. He also hit her numerous times with his belt. She called 911 but ultimately declined to prosecute Howard.

The jury also heard a tape-recorded phone call in which Meeks confronted Howard about threatening her mother and breaking her mother's window. Howard tacitly admitted one of his associates was responsible for the broken window, and Howard also stated, "I'm gonna kill your motherfucking ass, bitch" and, "We locked and loaded over here, bitch."

B. Defense Evidence

A defense investigator testified he interviewed Meeks and she recanted her claims that Howard attacked her. She told the defense investigator she called police because she was angry at Howard, using her neighbor's phone because Howard had her cell phone, and she lied to police about Howard hitting her because she wanted to get Howard in trouble and did not tell police the truth.

4

ANALYSIS

A. <u>The Confrontation Clause Claim</u>

Howard argues admission into evidence of the statements Meeks made to police at the scene violated his Sixth Amendment right to confront and cross-examine witnesses against him under *Crawford v. Washington* (2004) 541 U.S. 36.

*Crawford*

*Crawford* held that admission of so-called "testimonial" hearsay violates a defendant's Sixth Amendment rights unless the witness is unavailable and the defendant has had the opportunity to cross-examine the declarant.  (*Crawford v. Washington, supra,* 541 U.S. at pp. 68-69.)  The Supreme Court in *Davis v. Washington* (2006) 547 U.S. 813 refined when out-of-court statements to police are "testimonial" within the *Crawford* rule, rather than "nontestimonial" and outside the exclusionary rule, by explaining that, "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  (*Davis,* at p. 822, fn. omitted.)

Our Supreme Court, which has recognized that not all interrogations by law enforcement officers produce "testimonial" hearsay subject to the confrontation clause (*People v. Blacksher* (2011) 52 Cal.4th 769, 811), has explained that a court must

5

examine "six factors to consider in determining whether statements made in the course of police questioning were for the ' "primary purpose of creating an out-of-court substitute for trial testimony" that implicates the confrontation clause.' [Quoting *Blacksher,* at p. 813.] These are (1) an objective evaluation of the circumstances of the encounter and the statements and actions of the individuals involved in the encounter; (2) whether the statements were made during an ongoing emergency or under circumstances that reasonably appeared to present an emergency, or were obtained for purposes other than for use by the prosecution at trial; (3) whether any actual or perceived emergency presented an ongoing threat to first responders or the public; (4) the declarant's medical condition; (5) whether the focus of the interrogation had shifted from addressing an ongoing emergency to obtaining evidence for trial; and (6) the informality of the statement and the circumstances under which it was obtained." (*People v. Chism* (2014) 58 Cal.4th 1266, 1289.)

*Howard's Crawford Claim Is Forfeited*

The prosecution filed a pretrial motion in support of the admission of Meeks's statements to police at the scene. Howard's written motions in limine did not object to the admission of Meeks's statements to police at the scene under *Crawford*, and at the hearing on the pretrial motions Howard's counsel (addressing the admission of Meeks's statements to police) stated only that "I think the rule of completeness would apply" and "if the People can lay the evidentiary foundations that it comes in . . . ." The court therefore ruled the statements would be admitted "subject to the appropriate foundation

6

being made." At trial, Howard did not object to the police officers' testimony concerning Meeks's statements made at the scene.

Under these circumstances, we are satisfied Howard's claim on appeal—that admission of Meeks's statements to police at the scene violated his right to confront witnesses under *Crawford*—is forfeited. "[N]umerous decisions by this court have established the general rule that trial counsel's failure to object to claimed evidentiary error on the same ground asserted on appeal results in a forfeiture of the issue on appeal." (*People v. Dykes* (2009) 46 Cal.4th 731, 756.) The rule of forfeiture applies with equal force to claims that admission of evidence violated the confrontation clause. (See *People v. Redd* (2010) 48 Cal.4th 691, 730 ["Defendant also contends that the admission of out-of-court identifications violates a defendant's right under the Sixth Amendment to confront witnesses, even when the declarant testifies. He did not raise an objection below based upon the confrontation clause, and therefore has forfeited this claim."].) The forfeiture rule applies with particular force here, because the admissibility of Meeks's statements under *Crawford* turned on a host of peculiarly factual issues necessary to deciding whether her statements were "testimonial" or were instead "nontestimonial" under the factual inquiries outlined in *People v. Chism, supra,* 58 Cal.4th at page 1289. The absence of a timely and specific objection under *Crawford* lulled the prosecution into *not* introducing evidence on whether the evidence was nontestimonial because the officers believed there was (or appeared to be) an ongoing emergency, or whether any actual or perceived emergency presented an ongoing threat to them or to the public.

Furthermore, there was no detailed evidence on Meeks's medical condition or on whether the focus of the interrogation had shifted from addressing an ongoing emergency to obtaining evidence for trial, which could have supported inadmissibility of the statements had a timely and specific objection been raised.[2]  Under these circumstances, we conclude the absence of a timely and specific *Crawford* objection forfeits the issue.

B. The Prior Acts Claim

Howard argues the court abused its discretion when it permitted the prosecution to admit evidence of his prior assaults on Baines, and his threatening telephone call to Meeks.

*Legal Framework*

Evidence a defendant committed an uncharged offense is ordinarily inadmissible to establish a disposition to commit a charged offense.  (Evid. Code, § 1101, subd. (a).)  However, Evidence Code section 1109 provides, in subdivision (a), that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."  This statute "reflects the legislative judgment that in domestic violence cases, as in

---

[2]     Additionally, the absence of a timely and specific objection also rendered moot any inquiry into Meeks's "availability" to testify at trial, another relevant consideration in the *Crawford* matrix.  (Cf. *People v. Byron* (2009) 170 Cal.App.4th 657, 669-674 [availability of witness is factual determination relevant to admission of testimony under *Crawford*].)

sex crimes, similar prior offenses are 'uniquely probative' of guilt in a later accusation." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 532.)

Thus, under Evidence Code section 1109, evidence of prior uncharged acts of domestic violence not too remote in time are accorded the same treatment as all other forms of relevant evidence not subject to any exclusionary principle, and the presumption will be in favor of admission but subject to the caveat that the court may nevertheless exclude the evidence under Evidence Code section 352. (Cf. *People v. Loy* (2011) 52 Cal.4th 46, 62-63 [addressing analogous Evid. Code, § 1108].) Thus, even where the evidence is admissible by virtue of Evidence Code section 1109, a trial court may still exclude the evidence pursuant to Evidence Code section 352 if it determines the probative value of the evidence is substantially outweighed by the probability the evidence will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. (*People v. Hoover* (2000) 77 Cal.App.4th 1020, 1028-1029.) "The court enjoys broad discretion in making this determination, and the court's exercise of discretion will not be disturbed on appeal except upon a showing that it was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1233.)

*Analysis*

Howard has not demonstrated the rulings admitting the evidence of prior acts was arbitrary, capricious or patently absurd. The events involving Baines showed Howard

9

attacked his live-in girlfriend, hitting her in the head and choking her into unconsciousness, including attacks on Baines when she was pregnant with his child. Because those attacks bore strong resemblances to the charged offense, they were not unduly prejudicial but instead were " 'uniquely probative' of guilt in a later accusation." (*People v. Johnson, supra,* 185 Cal.App.4th at p. 532.)

Howard asserts it was an abuse of discretion to admit the evidence of his attacks on Baines because those attacks were both dissimilar to, and more inflammatory than, his alleged assault on Meeks. He asserts that because one attack on Baines involved his use of a knife to cut her twice, and one involved throwing her down the stairs and using a belt to inflict multiple blows, it was more prejudicial than probative. However, Meeks's statement was that Howard punched her face several times, slammed her against a wall, and choked her into unconsciousness. Although the attacks on Baines (unlike the attack on Meeks) did involve use of a weapon on two occasions, we cannot conclude the degree of violence employed on Baines was so significantly greater than that used against Meeks that the danger of undue prejudice from the Baines evidence substantially outweighed the probative value of the evidence on the issue of whether Howard attacked Meeks.

Howard also asserts it was an abuse of discretion to admit the tape of the phone call concerning the vandalism of Meeks's mother's home because it was a profanity laced tirade by Howard having no relevance to any issue and only served to "create extreme distaste for appellant as a person." However, the phone call was admissible to show Howard visited retribution on those who crossed him, and included threats of violence

10

against Meeks, which was probative on why Meeks was unwilling to testify against Howard at trial (cf. *People v. Golden* (1961) 55 Cal.2d 358, 371), and on what may have motivated her to retract her allegations against Howard when she spoke with the defense investigator. (*People v. Brooks* (1979) 88 Cal.App.3d 180, 187, disapproved on other grounds by *People v. Mendoza* (2011) 52 Cal.4th 1056, 1086.)

DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

AARON, J.