Filed 1/22/25  P. v. Redondo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JONATHON DANIEL REDONDO,<br><br>    Defendant and Appellant. | G062717<br><br>(Super. Ct. No. 21CF3139)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge. Affirmed and remanded with instructions.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette

C. Cavalier, Kathryn Kirschbaum, and Sahar Karimi, Deputy Attorneys General, for Plaintiff and Respondent.

*     *     *

After he repeatedly threatened his ex-girlfriend and then broke into her apartment, Jonathon Daniel Redondo was convicted of stalking, burglary, and other crimes. He contends the trial court erroneously admitted evidence of and instructed the jury on his prior acts of domestic violence, and that his custody credits must be adjusted.

We reject his first argument. We therefore affirm the judgment, but since we find his second argument has merit, we remand the case to allow the trial court to correct the abstract of judgment.

FACTS[1]

Redondo began dating Alicia C. in 2018. They were engaged in 2020, but broke up in May 2021.

In the months after their breakup, Redondo constantly texted and called Alicia, and he became angry if she did not quickly respond. He often came to her apartment uninvited, sometimes in the middle of the night; he also showed up unannounced at the homes of her family members. On several occasions, Redondo threatened to kill himself, Alicia, and her family.

Things came to a head in October 2021, when Redondo broke into Alicia's apartment while she was out and sent her a series of text messages. After seeing Redondo inside her apartment via a security video, Alicia called 911. Officers arrived and asked Redondo to exit peacefully, but Redondo locked himself in the apartment and refused to come out. Officers eventually

---

[1] We provide a concise version of the facts; a thorough summary is not necessary given the limited issues on appeal.

2

broke down the door with a battering ram and apprehended Redondo using a K-9 dog.

Redondo was charged with stalking, first degree residential burglary, and other crimes. At trial, over the defense's objection, the prosecution presented evidence that Redondo had committed other uncharged acts of domestic violence against Alicia in February 2021. The trial court also instructed the jury that it could consider uncharged acts of domestic violence when determining whether Redondo was likely to and did commit stalking and burglary. (See CALCRIM No. 852A.)

The jury found Redondo guilty as charged, and the trial court sentenced him to two years in state prison. Redondo filed a notice of appeal.

DISCUSSION

I.

PRIOR ACTS OF DOMESTIC VIOLENCE

Redondo first contends that the trial court erred in admitting evidence of, and instructing the jury about, his prior uncharged acts of domestic violence, and that these errors prejudiced him because they enabled Alicia to win the "credibility contest" at trial. We find no error.

As a general rule, the prosecution cannot use specific instances of a defendant's prior conduct to prove his conduct on a specific occasion. (Evid. Code, § 1101, subd. (a).) However, Evidence Code section 1109 (section 1109) creates a limited exception to this rule and allows the admission of evidence related to a defendant's other acts of domestic violence "in a criminal action in which the defendant is accused of an offense involving domestic violence." (*Id.*, subd. (a)(1).)

"Section 1109 thus supplants the usual rule of evidence that evidence of past conduct is not admissible to prove a defendant's conduct on a

3

specified occasion." (*People v. Hoover* (2000) 77 Cal.App.4th 1020, 1026.) We review a trial court's decision to admit evidence under section 1109 for abuse of discretion. (*People v. Mani* (2022) 74 Cal.App.5th 343, 358 (*Mani*).)

Redondo asserts that the evidence about his prior uncharged acts of domestic violence was not admissible in this case because neither stalking nor burglary (the crimes he was charged with here) is an "offense involving domestic violence." (See § 1109, subd. (a)(1).) We disagree.

Section 1109 defines "'[d]omestic violence'" as follows: "'Domestic violence' has the meaning set forth in Section 13700 of the Penal Code. Subject to a hearing conducted pursuant to Section 352, which shall include consideration of any corroboration and remoteness in time, 'domestic violence' has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years before the charged offense." (§ 1109, subd. (d)(3).) As such, "there are two definitions of domestic violence applicable to section 1109, one in the Penal Code and another in the Family Code." (*Mani, supra*, 74 Cal.App.5th at p. 359.)

The Penal Code definition defines "'[d]omestic violence'" as "abuse committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship." (Pen. Code, § 13700, subd. (b).) It defines "'[a]buse'" as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another." (*Id.*, subd. (a); see also *People v. James* (2010) 191 Cal.App.4th 478, 483 [although not all burglaries qualify as an offense involving domestic violence under section 1109 and Penal Code

4

section 13700, a burglary that places the victim in reasonable apprehension of imminent serious bodily injury does].)

The Family Code definition of domestic violence cited in section 1109 is broader than the Penal Code definition. Family Code section 6211, which is part of the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.; DVPA), defines "'[d]omestic violence'" as "abuse perpetrated against" certain specified persons, including a "former cohabitant" and a "person with whom the respondent . . . has had a dating or engagement relationship." (Fam. Code, § 6211, subds. (b) & (c).) The DVPA in turn defines "abuse" to include conduct that "place[s] a person in reasonable apprehension of imminent serious bodily injury to that person or to another," as well as "any behavior that has been or could be enjoined pursuant to [Family Code] Section 6320" (*id.*, § 6203, subd. (a)(3)-(4)), such as "*stalking*, threatening, . . . or *disturbing the peace of the other party*," among other actions (*id.*, § 6320, subd. (a), italics added).

Reading these statutory provisions together, the term "domestic violence" as used in Family Code section 6211 plainly includes "stalking" and other acts "disturbing the peace of the other party" when "perpetrated against" a "former cohabitant" or "person with whom the respondent . . . has had a dating or engagement relationship." (Fam. Code, §§ 6203, subd. (a)(4), 6211, subds. (b) & (c), 6320, subd. (a); cf. *Mani, supra,* 74 Cal.App.5th at p. 359 ["The Family Code definition of domestic violence is found in a combination of several provisions"].) Since section 1109 expressly incorporates that statutory definition into its own definition of "domestic violence" (*id.*, subd. (d)(3)), the charges brought here—stalking and

5

first degree residential burglary—both qualify as crimes involving domestic violence within the meaning of section 1109.[2]

We are not the first court to interpret section 1109 in this manner. (See *Mani, supra,* 74 Cal.App.5th at p. 361 [evidence of uncharged acts of domestic violence was properly admitted in burglary trial because "the plain and unambiguous language of section 1109, subdivision (d)(3), incorporates, in addition to Penal Code section 13700, the Family Code definition of abuse—including the behaviors listed in Family Code section 6203, subdivision (a)(4)—provided that the events occurred within five years of the charged offense"]; *People v. Ogle* (2010) 185 Cal.App.4th 1138, 1144, 1142 (*Ogle*) [citing Family Code sections 6203 and 6320 and rejecting the defendant's contention "that his prior conviction for stalking was inadmissible to prove his propensity to commit the charged crimes because it was not an act of domestic violence within the meaning of section 1109"].)[3]

We presume the Legislature is aware of these opinions, and the fact that it has not amended section 1109 to exclude stalking or burglary

---

[2] Breaking into an ex-girlfriend's apartment and refusing police requests to exit is behavior that disturbs the peace.

[3] Redondo relies on *People v. Zavala* (2005) 130 Cal.App.4th 758, 771 (*Zavala*), which was decided before *Mani* and *Ogle*, for the proposition that stalking is not a crime of domestic violence under section 1109. However, as the *Mani* court observed (*Mani, supra,* 74 Cal.App.5th at pp. 363-364), at the time of the trial in *Zavala*, the Family Code definition of domestic violence was not yet incorporated into section 1109. Indeed, the *Zavala* court did not even discuss the Family Code definition of domestic violence and instead held only that stalking is not "a crime of domestic violence (as defined by [Penal Code] section 13700." (*Zavala, supra,* at p. 771.) *Zavala* is therefore of limited precedential value here.

6

from the definition of crimes involving domestic violence suggests the Legislature approves of the statutory construction outlined in *Mani* and *Ogle*. (See *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1156 [""Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it"""].)

It bears emphasizing that section 1109 does not require that the defendant be separately charged with domestic violence. It "merely requires that the criminal action in which the defendant is accused be one '*involving* domestic violence.'" (*Mani, supra,* 74 Cal.App.5th at p. 365; see *People v. Wang* (2020) 46 Cal.App.5th 1055, 1077 ["being "'accused of an offense *involving* domestic violence'" encompasses a broader range of conduct than the domestic violence defined as abuse committed against one of certain specified individuals under Penal Code section 13700"].) This language further supports our reading of the statute.

Because stalking and first degree residential burglary both qualify under section 1109 as an "offense involving domestic violence," as defined in Family Code 6211, evidence concerning Redondo's commission of other acts of domestic violence was admissible if those acts "occurred no more than five years before the charged offense." (§ 1109, subds. (a)(1) & (d)(3).) That was the case here; Redondo's prior uncharged acts of domestic violence occurred just months before the charged offenses. We therefore find no error in the court's decision to admit that evidence and to instruct the jury that Redondo's prior acts of domestic violence could be used as propensity evidence as to the burglary or stalking charges. Because we find no

7

evidentiary or instructional error, we need not address Redondo's additional arguments concerning alleged prejudice.

## II.

## CREDITS

Redondo's next argument is about the credits awarded to him by the court at sentencing. When a defendant is convicted of a violent felony, conduct credits are limited to 15 percent. (Pen. Code, §§ 667.5, subd. (c), 2933.1, subd. (a).) In this case, the trial court awarded Redondo 601 actual days of credit, plus 90 days of conduct credit, for a total of 691 days of credit. It appears the court limited Redondo's credits to 15 percent, as the court referenced "2933.1" during sentencing and added only 90 days of conduct credits for the 601 days Redondo served.

Redondo contends, and the Attorney General concedes, that the trial court erred in limiting Redondo's conduct credits to 15 percent. Although a first degree residential burglary is a "violent felony" when "it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary" (Pen. Code, §§ 460, 667.5, subd. (c)(21)), here there was no allegation that anyone else was present during the burglary. The 15 percent conduct credit limit is thus inapplicable here, and the abstract of judgment should be amended to reflect 601 actual days of credit, plus 600 days of conduct credit, for a total of 1,201 days.

## DISPOSITION

The judgment is affirmed. The matter is remanded to the trial court with directions to prepare an amended abstract of judgment consistent

8

with this opinion and to forward a certified copy to the Department of Corrections and Rehabilitation.


                              GOETHALS, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.