Filed 9/22/15  P. v. Macalingay CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061746 |
| v. | (Super.Ct.No. RIF1206948) |
| QUINTIN A. MACALINGAY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.
Affirmed.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and
Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney
General, Julie L. Garland, Assistant Attorney General, and Charles C. Ragland and
Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

Each of defendant Quintin A. Macalingay's three stepgranddaughters testified that he molested her. He had a consistent modus operandi; when one of them was sitting on his lap, he would fondle her breast area and touch her crotch.

In addition, one of defendant's adult stepdaughters (the victims' aunt) testified that, when she was approximately 16, defendant repeatedly fondled her breasts while she was sleeping. Twice, he showed her photographs of naked women.

A jury found defendant guilty of two counts of a lewd act on a child under 14. (Pen. Code, § 288.) A multiple-victim allegation for purposes of the "One Strike" law was found true. (Pen. Code, § 667.61, subd. (e)(4).) The jury deadlocked on a third count of a lewd act and on one count of sexual penetration of a child 10 or younger. (Pen. Code, § 288.7, subd. (b).) The trial court eventually dismissed these counts.

Defendant was sentenced to a total of 30 years to life, along with the usual fines, fees, and requirements.

Defendant now contends that the trial court erred by admitting the evidence of uncharged "bad acts" involving his stepdaughter. We find no error. Hence, we will affirm.

I

FACTUAL BACKGROUND

Defendant had two adult stepdaughters, Mary and Christine. Mary had three minor daughters, Jane Doe 1, Jane Doe 2, and Jane Doe 3.[1]

A. *Jane Doe No. 3 — Count 4, Lewd Act (Hung Jury).*

Doe 3 was the youngest of the three girls. At the time of trial, she was seven.

One time when Doe 3 was five or six, she was at defendant's house, sitting on his lap in the living room while they both watched TV. Her parents were there, watching TV with them. Her grandmother (defendant's wife) was in the kitchen. Defendant touched Doe 3's "pee pee" and "butt" over her clothes.

Another time, also at defendant's house, and also while she was on his lap, defendant touched her "booby" over her clothes.

B. *Jane Doe No. 1 — Count 1, Sexual Penetration (Hung Jury) and Count 2,*

   *Lewd Act (Guilty).*

Doe 1 was the middle child. At the time of trial, she was nine.

On July 4, 2012, when Doe 1 was seven years old, her parents took her to a family gathering at her Aunt Christine's house. Defendant was sitting outside and Doe 1 was sitting on his lap while they both watched fireworks. The only other adult who was outside was Doe 1's uncle, and he was not near them.

---

[1] The trial court ordered that the victims be referred to by these fictitious names. (Pen. Code, § 293.5.)

Defendant put his hand under Doe 1's shirt and touched her "boob." He then put his hand down her pants and touched her "pee pee." He put his finger in her "pee pee hole." It hurt.

Twice before, when she was at his house, sitting on his lap, defendant had put his hand under her clothes, squeezed her "booby," and touched her "pee pee."

C.  *Jane Doe No. 2 — Count 3, Lewd Act* (*Guilty*).

Doe 2 was the eldest girl. At the time of trial, she was 11.

One time when Doe 2 was 9 or 10, she was sitting on defendant's lap in his living room while they both watched TV. Her parents were not there. Her grandmother was in the kitchen.

Defendant rubbed Doe 2's vagina over her clothes, then put his hand under her clothes and rubbed her breast. She tried to pull away, but he kept pulling her back. When he stopped, she got up.

The next day, all three girls and their mother were at a doctor's office. Doe 3 told their mother that defendant had touched Doe 2's "boobs." She added that this had also happened to her and to Doe 1. Both Doe 1 and Doe 2 confirmed this. Doe 1 added that defendant had touched her "pee pee."

D.  *Further Investigation*.

Forensic interviews were conducted with each of the three girls. These were videotaped and played for the jury. The girls' statements in the interviews were largely consistent with their testimony at trial, with the following exceptions.

4

Doe 1 said that, when defendant touched her at Christine's house, they were at a kitchen table; she did not mention watching fireworks. Doe 1 also said that defendant had put his tongue in her mouth. At trial, however, she denied this.

Doe 2 said that, when defendant touched her breast, his hand was under her shirt but over her bra. At trial, however, she testified that she was not wearing a bra.

A forensic medical examination of Doe 1 produced only normal findings; however, this was to be expected.

According to both the forensic interviewer and the forensic medical examiner, most persons who sexually abuse children are family members. Although fondling or touching usually occurs in secrecy, it may also occur when other people are in the room.

Sexual abuse often starts with grooming. "[I]t starts with something innocent that a child feels is fine and then . . . gradually becomes more . . . ."

E.    *Uncharged Prior Sexual Offenses.*

Christine, defendant's youngest stepdaughter, was 34 at the time of trial.

Christine testified that around 1995, when she was 15, 16, or 17, defendant molested her repeatedly. At times when her mother was not home, around 5:00 a.m., before defendant left for work, she would wake up to find him fondling her breasts under her clothes. He claimed he was just covering her up with a blanket. Finally, she told defendant, "[If] you do that again, I'm going to call the police," and defendant stopped. When she was 17, she told her mother about the molestation, but her mother did not believe her.

5

On one occasion, when Christine was about 17, defendant showed her a Playboy centerfold. Another time, when she was still in high school, he showed her a wallet-sized photograph of a naked woman.

When Christine was 18, she and her mother got into a fight because she was staying overnight with friends and not coming home. The police were called. Christine told them about the molestation and about the nude photographs. They said that, because she had no proof, she should just move out. Christine then told her sister Mary about the molestation and about the nude photographs.

F.     *Defense Evidence*.

Defendant's next-door neighbors and their children, who all had a "close relationship" with defendant, testified that he had never shown any sexual interest in children.

Defendant's wife confirmed that she had had an argument with Christine during which the police arrived, and that Christine told them that defendant had molested her. Otherwise, however, Christine never told her anything about defendant molesting her or showing her nude photographs.

II

OTHER "BAD ACTS" EVIDENCE

Defendant contends that the trial court erred by overruling his objection under Evidence Code section 352 to the evidence of uncharged offenses involving Christine.

6

A.    *Additional Factual and Procedural Background.*

The prosecution moved in limine to admit evidence of defendant's molestation of Christine under Evidence Code section 1108.  Defense counsel objected based on Evidence Code section 352, arguing that the conduct shown was insufficiently similar, was remote, and had not resulted in a conviction.  After hearing argument, the trial court admitted this evidence.

The trial court noted that it considered "the conduct of showing [Christine] pictures of nude women" to be "separate" from the molestation.  The prosecutor argued, "[I]t's very similar in regards to trying to sexualize a child, trying to make it seem like these things are okay, that they're not that big of a deal."  Defense counsel responded that, absent expert testimony, it was not apparent that defendant's conduct with his stepgranddaughters included "sexualization."  The trial court found the prosecutor's argument "persuasive," and it also admitted this evidence.

The jury was instructed:  "If you decide that the defendant committed the uncharged offenses, you may but are not required to conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses and based on that decision also conclude defendant was likely to commit and did commit Counts 1 through 4 as charged here.  If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all of the other evidence.  It is not sufficient by itself to prove that the defendant is guilty [of] Counts 1 through 4.  The

7

People must still prove each charge and allegation beyond a reasonable doubt. Do not consider this evidence for any other purpose." (CALCRIM No. 1191.)

B.      *Analysis*.

Evidence Code section 1108, subdivision (a), provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Evidence Code "section 1108 'implicitly abrogates prior decisions . . . indicating that "propensity" evidence is per se unduly prejudicial to the defense.' [Citation.]" (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160.)

"'[Evidence Code s]ection 1108 preserves the trial court's discretion to exclude evidence under [Evidence Code] section 352 if its prejudicial effect substantially outweighs its probative value. [Citations.] In deciding whether to exclude evidence of another sexual offense under section 1108, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." [Citation.] Like any ruling under section 352, the trial court's

8

ruling admitting evidence under section 1108 is subject to review for abuse of discretion.' [Citation.]" (*People v. Avila* (2014) 59 Cal.4th 496, 515.)

Evidence that defendant had a propensity to commit sexual offenses against underage girls was substantially probative. "'In the determination of probabilities of guilt, evidence of character is relevant. [Citations.]' [Citation.] Indeed, the rationale for excluding such evidence is not that it lacks probative value, but that it is too relevant." (*People v. Fitch* (1997) 55 Cal.App.4th 172, 179.) It was particularly probative in this case, because it tended to prove that defendant acted with a sexual intent when he committed the charged crimes.

Defendant argues that the uncharged offenses were not sufficiently similar to the charged offenses. However, defendant's fondling of Christine's breasts under her clothes was similar to his fondling of the victims' breasts under their clothes. In addition, as defendant concedes, it is probative that in both instances, he targeted young female relatives when left alone with them. (*People v. Cottone* (2013) 57 Cal.4th 269, 286 ["The conduct in this case, which involved touching the vaginal area of his young sister, was manifestly relevant on the question of whether defendant sexually assaulted another young female relative."].) It is also significant that they were related to him not by blood, but through marriage.

Defendant points to two differences. First, Christine was older and more physically mature than the other victims. Second, defendant molested Christine when she was in her bed and the other victims when they were on his lap. In both instances,

9

however, he took advantage of the ambiguity of the circumstances; with Christine, he claimed to be pulling a blanket over her, and with his stepgranddaughters, he would claim to be just holding them on his lap. In any event, despite these differences, the evidence still had substantial probative value because it showed that defendant had a predisposition to molest young female relatives in his home, starting by fondling their breasts. Indeed, the differences tended to show that this predisposition transcended any particular age or other circumstances.

Defendant also argues that the evidence, dating from approximately 17 years before the charged offenses, was remote. "Remoteness of prior offenses relates to 'the question of predisposition to commit the charged sexual offenses.' [Citation.] In theory, a substantial gap between the prior offenses and the charged offenses means that it is less likely that the defendant had the propensity to commit the charged offenses. However, . . . significant similarities between the prior and the charged offenses may 'balance[] out the remoteness.' [Citation.] Put differently, if the prior offenses are very similar in nature to the charged offenses, the prior offenses have greater probative value in proving propensity to commit the charged offenses." (*People v. Branch* (2001) 91 Cal.App.4th 274, 285.) Here, given the significant similarities noted above, the lapse of time simply meant that defendant's predisposition was persistent and long-standing.

Next, defendant notes that the jury learned that he had never been punished for the uncharged offenses. "[T]he circumstance that the uncharged acts resulted in a criminal conviction and a substantial prison term decreases, in two ways, the potential for

prejudice, undue consumption of time, or confusing the issues. [Citation.] First, the jury [i]s not tempted to convict defendant of the charged offenses, regardless of his guilt, in order to assure that he would be punished for the uncharged offenses . . . . Second, the attention of the jury [i]s not diverted to a determination whether or not defendant had committed the uncharged offenses . . . . [Citation.]" (*People v. Balcom* (1994) 7 Cal.4th 414, 427.)

"The potential for prejudice is decreased, however, when testimony describing the defendant's uncharged acts is no stronger or more inflammatory than the testimony concerning the charged offense. [Citation.]" (*People v. Tran* (2011) 51 Cal.4th 1040, 1047; accord, *People v. McCurdy* (2014) 59 Cal.4th 1063, 1099.) Defendant concedes that the uncharged offenses were no more inflammatory than the charged offenses. Defendant also concedes that "consumption of undue time . . . is of no moment herein." Thus, we cannot say that the evidence of the uncharged offenses was unduly prejudicial.

We therefore conclude that the trial court did not err by admitting the evidence that defendant molested Christine.

Essentially as a fallback argument, however, defendant claims that, even if the trial court properly admitted evidence that he molested Christine, it erred by admitting the evidence that he showed Christine pictures of naked women.

Basically, defendant argues that this evidence was not sufficiently similar to any of the charged conduct, and therefore it should have been excluded under Evidence Code section 352. This overlooks the fact that it was relevant for more than one reason. First,

11

it was relevant to show a predisposition to commit sexual offenses under Evidence Code section 1108.[2]  Second, however, it was also relevant under Evidence Code section 1101, subdivision (b) to show that defendant entertained a sexual intent *toward Christine*. When defendant touched Christine, he claimed that he was just pulling a blanket over her. The fact that he later showed her sexually tinged photographs was probative to rebut this. Evidence that he had a sexual intent toward Christine, in turn, was probative to show that he had a sexual intent toward the victims.

"'The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent.  [Citation.] . . .  In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance.'  [Citations.]" [Citation.]' [Citation.]" (*People v. Leon* (2015) 61 Cal.4th 569, 598.) Here, the very fact that defendant chose the same victim — Christine — for both the uncharged touching and the uncharged display of the photographs made the latter significantly probative of his intent during the former.  (See *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1026 [Fourth Dist., Div. Two].)

---

[2]      It is a crime to show "harmful matter" to a minor.  (Pen. Code, § 288.2, subd. (a); see also Pen. Code, § 313, subd. (a).)  This is a "sexual offense" within the meaning of Evidence Code section 1108.  (Evid. Code, § 1108, subd. (d)(1)(A).)  In addition, as defendant concedes, annoying or molesting a child (Pen. Code, § 647.6, subd. (a)(1)) is also a "sexual offense" (Evid. Code, § 1108, subd. (d)(1)(A)).

12

The evidence regarding the nude photographs was not particularly inflammatory nor particularly time-consuming.  Accordingly, the trial court did not err by admitting it.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

MILLER
J.

13