Filed 8/23/16  P. v. Sanchez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSE SANCHEZ,<br><br>        Defendant and Appellant. | A145291<br><br>(Contra Costa County<br> Super. Ct. No. 5-140478-9) |

        This is an appeal from judgment after a jury convicted defendant Jose Sanchez[1] of one count of assault by force likely to cause great bodily harm and one count of child abuse.  Defendant challenges the judgment on two grounds, first, abuse of discretion and violation of his constitutional right to due process based upon the jury's consideration of evidence of his commission of prior uncharged acts of domestic violence and, second, further abuse of discretion and due process violation due to the trial court's refusal to designate his "wobbler" offenses as misdemeanors rather than felonies.[2]  We affirm.

---

[1]        The probation officer's report shows defendant's correct name to be "Jose Sanchez" with aliases of "Juan Manuel Gallardo," "Juan Arroyo," and "Juan Manuel Ceja."  We use "Jose Sanchez" as defendant's correct name, noting that the clerk's and reporter's transcripts in this case refer to defendant as "Juan Manuel Gallardo."

[2]        As explained in greater detail below, a "wobbler" offense is one punishable as either a felony or misdemeanor at the trial court's discretion.  (Pen. Code, § 17, subd. (b); *People v. Tran* (2015) 242 Cal.App.4th 877, 885.)

1

## FACTUAL AND PROCEDURAL BACKGROUND

On March 13, 2014, defendant was charged by information with the following crimes: assault by force likely to cause great bodily harm (Pen. Code, § 245, subd. (a)(4)) (count one); child abuse likely to cause great bodily harm (*id*., § 273a, subd. (a)) (count two); and battery on a spouse or cohabitant (*id*., §§ 242/243 (subd. (e)(1)) (count three).[3] Trial began on February 25, 2015, at which the following evidence was presented.

On the afternoon of October 4, 2013, defendant and his longtime domestic partner, L.V., began arguing after defendant found another man's phone number on L.V.'s cell phone and suspected she may have been unfaithful to him. This argument took place at the couple's residence, which they shared with their two year-old daughter, as well as L.V.'s two children, I.V., her 17-year-old daughter, and J.V., her 15-year-old son. As the couple's argument escalated, defendant slapped L.V. once or twice in the face, and she hit him back, denying having cheated on him. Defendant reacted by retreating to his bedroom for a nap.

About two hours later, defendant awoke and went to the garage to work on his car. L.V. confronted him there, again denying infidelity. Defendant told her to leave him alone, prompting L.V. to push him on the shoulder. At this point, defendant pushed L.V. back, and L.V. called out to I.V. for help, afraid he would strike her with a nearby wrench. I.V., who stands five feet, one inch tall, and weighs 110 pounds, entered the garage and saw the couple arguing. According to I.V., defendant "put his hands on [L.V.]," and "could have been" grabbing, pushing or hitting her. I.V. stood between the couple in an effort to get them to stop fighting. Defendant, however, told her to leave them and go inside. When I.V. then pushed him, defendant put his hands on her face and pushed her back. I.V., in turn, picked up a bottle of laundry detergent and tried to hit him with it. At this juncture, all three became involved in the altercation.

At some point, I.V. tried to reach for a tool and defendant pinned her to the ground. She was able to get up, however, and retreat to the kitchen, where she retrieved

---

[3] Unless otherwise stated, all further statutory references herein are to the Penal Code.

2

defendant's cell phone and threw it beyond the kitchen into the garage. Defendant reacted by charging into the kitchen and punching I.V. in the face with a closed fist, knocking her to the ground. I.V. got up, grabbed her two year-old sister, and ran to her room, where she locked the door and called 911. At this point, I.V. was bleeding from a laceration on her eye, and had pain inside her mouth, where defendant's punch had caused her braces to impact her cheek.

A short time later, Police Officer Sahar Barkzi responded to I.V.'s 911 call. When she knocked on the door, defendant opened it, stating, "I know I'm going to jail." When the officer next went to I.V.'s bedroom, she found I.V. hysterical and crying, with blood on her face and hands. I.V. told Officer Barkzi that defendant had punched her. She further stated that, when she tried to intervene in defendant's and L.V.'s altercation, defendant hit her twice in the face, causing her to fall, and then pinned her down and hit her in the face again before she was able to run to the kitchen. Officer Barkzi noticed a bleeding laceration above I.V.'s eye, so she helped arrange for I.V. to be transported to the hospital, where she received treatment and threw up several times.

Officer Barkzi also asked to speak to L.V., but L.V., who was upset and crying, told the officer that she primarily spoke Spanish, so could not converse with the officer. Officer Barkzi asked whether anyone was available to translate for her, and L.V. responded that her son, J.V., could do so. With J.V.'s assistance, L.V. then told Officer Barkzi that defendant had hit her while holding keys, causing pain to her head, neck and chest. L.V. also told the officer that defendant had hit I.V. during their altercation, and that he had previously hit her on numerous past occasions, always with his hands.

After helping to arrange medical treatment for L.V., Officer Barkzi saw J.V. sitting on a bed crying. When the officer approached him, J.V. explained there had been so many past incidents of domestic violence in their home that he had lost count, and that the violence involved the entire family, not just his mother. J.V. further stated that during a recent incident over the summer, which was not reported to police, L.V. had been

3

hospitalized due to defendant's abuse. J.V. added that he was scared and "tired of this happening."[4]

Later that evening, defendant came to the police station to speak with Officer Barkzi. Defendant admitted slapping L.V. once, and also backhanding her, after finding another man's number on her cell phone. Defendant also admitted punching I.V. in the face after she threw his cell phone at him, explaining he was angry because the phone had struck his car. This interview was recorded and later played for the jury.

Officer Barkzi returned to the family residence the next evening, and again spoke with I.V. Officer Barkzi noted that her eye and lip were swollen. I.V. again described the events of the previous day, reiterating that defendant had punched L.V. in the face and chest, and had hit her twice in the face when she tried to intervene. He also pinned her arms down and hit her in the face again. It was at this point, she recalled, that she escaped into the kitchen, returning with defendant's cell phone, which she hurled at him in the garage. According to I.V., defendant, extremely angry, then charged into the kitchen and punched her in the face, stating, "you owe this to me."

On the same evening, Officer Barkzi also attempted to speak again with L.V., but she was extremely evasive and declined to respond directly to her questions.

At trial, the prosecution offered Rickey Rivera, senior inspector with the Contra Costa County District Attorney's Office, who testified as an expert on the impact of domestic violence on victims. According to Inspector Rivera, victims may become trapped in a "cycle of violence" with their abusive partners, which may consist of a peaceful "honeymoon" phase, a "tension-building" phase, and a violent phase. He added that victims often blame themselves for the abuse, and may remain in the relationship despite the abuse for many reasons, including emotional concerns (including love or fear) or situational concerns. It is "very common" for victims to change or recant their stories

---

[4] At trial, L.V. denied that defendant had ever abused her, including on the day in question, and insisted that J.V. did not speak Spanish very well, so could not be relied upon for accurate translation. J.V., in turn, testified that he did not recall whether there had been any previous incidents of domestic violence in their house, and did not recall telling Officer Barkzi otherwise.

4

of abuse due to these same concerns and, once the victim recants her story, family members typically do the same.

Defendant offered no witnesses in his defense. During closing arguments, his counsel conceded that defendant had admitted slapping L.V. and punching I.V., and noted the real issue for the jury was whether he committed simple or aggravated assault crimes.

On March 4, 2015, the jury found defendant guilty of all counts. Following a sentencing hearing, the trial court suspended imposition of sentence[5] and placed defendant on formal probation for a period of three years subject to various terms and conditions, including service of 180 days in jail and completion of a 52-week domestic batterer's program.[6] Defendant filed a timely notice of appeal on May 21, 2015.

## DISCUSSION

Defendant raises two arguments on appeal. First, defendant contends the trial court abused its discretion and violated his due process rights by permitting the jury to consider evidence of his prior uncharged acts of domestic violence. Second, defendant contends the trial court further abused its discretion and violated his due process rights by rejecting his request pursuant to section 17 to designate his two "wobbler" offenses as misdemeanors rather than felonies. We address each argument in turn.

## I.      Admission of Evidence of Defendant's Prior Uncharged Crimes.

Defendant challenges as reversible error the trial court's admission of evidence of his commission of prior uncharged acts of domestic violence, including a particular incident occurring just months before the charged offenses that led to L.V.'s hospitalization. He reasons that this evidence was unduly vague and inflammatory, such that the court should have excluded it under Evidence Code section 352. He further

---

[5]      The sentencing order in the clerk's transcript is in the name of "Juan Manuel Gallardo" one of defendant's aliases. We order the sentencing order to be corrected to state defendant's real name, Jose Sanchez.

[6]      The trial court found defendant eligible to serve the jail time on electronic home detention.

5

insists the court's ruling constituted a violation of his rights to due process and a fair trial. The relevant law is not in dispute.

Generally, all relevant evidence is admissible. (*People v. Champion* (1995) 9 Cal.4th 879, 922.) Relevant evidence is that which has any tendency in reason to prove or disprove any disputed fact material to the outcome of the case. (Evid. Code, § 210.) "The test of relevance is whether the evidence tends ' "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive. [Citations.]' [Citation.] The trial court has broad discretion in determining the relevance of evidence [citations] but lacks discretion to admit irrelevant evidence. [Citations.]' [Citation.]" (*People v. Hamilton* (2009) 45 Cal.4th 863, 940.) Moreover, even relevant evidence may nonetheless be excluded if the trial court finds that its probative value is substantially outweighed by its prejudicial effect. (*People v. Champion, supra,* 9 Cal.4th at p. 922; Evid. Code, § 352.)

Here, the challenged evidence was admitted pursuant to Evidence Code section 1109, subdivision (a) (hereinafter, section 1109(a)), which provides in relevant part that, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code] Section 1101 if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (§ 1109(a).)[7] This provision reflects the well-established principle that " '[e]vidence that a defendant committed crimes other than those for which he is on trial is admissible when it is logically, naturally, and by reasonable inference relevant to prove some fact at issue, such as motive, intent, preparation or identity. [Citations.] The trial court judge has the discretion to admit such

---

[7] Evidence Code section 1101, in turn, "prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition.' [Citation.]" (*People v. Fuiava* (2012) 53 Cal.4th 622, 667.)

evidence after weighing the probative value against the prejudicial effect. [Citation.] When reviewing the admission of evidence of other offenses, a court must consider: (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant. [Citation.] Because this type of evidence can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." [Citation.]' [Citation.]" (*People v. Fuiava* (2012) 53 Cal.4th 622, 667.)

As several courts have recognized, use of character evidence in domestic violence cases is often more justified than in other criminal cases, such as murder or forgery cases, given the "typically repetitive nature" of domestic violence, which "suggests a psychological dynamic not necessarily involved in other types of crimes." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 532.) Acknowledging the unique nature of domestic violence crime, the legislative history of section 1109(a) provides: " 'The propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases. Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity. Without the propensity inference, the escalating nature of domestic violence is likewise masked. If we fail to address the very essence of domestic violence, we will continue to see cases where perpetrators of this violence will beat their intimate partners, even kill them, and go on to beat or kill the next intimate partner. Since criminal prosecution is one of the few factors which may interrupt the escalating pattern of domestic violence, we must be willing to look at that pattern during the criminal prosecution, or we will miss the opportunity to address this problem at all.' (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1876 (1995-1996 Reg. Sess.) June 25, 1996, pp. 3-4.)" (*People v. Hoover* (2000) 77 Cal.App.4th 1020, 1027-1028.)

Thus, in light of these factors, "the California Legislature has determined the policy considerations favoring the exclusion of evidence of uncharged domestic violence

7

offenses are outweighed in criminal domestic violence cases by the policy considerations favoring the admission of such evidence.' [Citation.]" (*People v. Hoover, supra,* 77 Cal.App.4th at pp. 1027-1028.)

However, at the same time, as an additional safeguard to the defendant's constitutional due process rights, even if the evidence is admissible under section 1109(a), the trial court still must assess under Evidence Code section 352 whether the probative value of the evidence is substantially outweighed by the probability the evidence will consume an undue amount of time or create a substantial risk of undue prejudice, confusion of issues, or mislead the jury. (*People v. Johnson* (2000) 77 Cal.App.4th 410, 420.) In making this assessment, courts recognize that "the principal factor affecting the probative value of any uncharged act is its similarity to the charged offense.' " (*People v. Johnson, supra,* 185 Cal.App.4th at p. 531.) Moreover, other factors weighing in favor of admissibility include whether the evidence of the prior domestic violence came from independent sources (which reduces the danger of fabrication), whether the defendant was convicted of the prior offenses, whether the prior offenses are remote in time, and whether presentation of the evidence would unduly confuse the issues or consume an inordinate amount of time at trial. (*People v. Johnson, supra,* 185 Cal.App.4th at pp. 533-535.)

Finally, as with other evidentiary rulings, the trial court has broad discretion when making this determination, and we will not disturb the court's exercise of discretion on appeal absent a showing that it was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Brown* (2003) 31 Cal.4th 518, 547; *People v. Avitia* (2005) 127 Cal.App.4th 185, 193; *Korsak v. Atlas Hotels, Inc*. (1992) 2 Cal.App.4th 1516, 1522-1523.)

Applying these principles to the facts at hand, we find nothing arbitrary, capricious, or patently absurd about the trial court's decision to admit the evidence of defendant's commission of prior uncharged acts of domestic violence pursuant to Evidence Code sections 1109(a) and 352. Most significant, we conclude, is the fact that the prior uncharged acts involved similar conduct against the same victim – to wit, L.V.

8

In addition, according to J.V.'s statements to Officer Barkzi, the particular prior act which was serious enough to lead to L.V.'s hospitalization occurred in July, just months before the incident at hand.[8] While J.V. later testified that he did not recall giving this information to the officer, and while none of the witnesses was willing or able to provide further detail about the incident, the trial court nonetheless had discretion to permit the jury to consider the evidence in light of its substantial probative value with respect to the issue of defendant's propensity to engage in domestic violence against the same victim. (*People v. Johnson, supra,* 185 Cal.App.4th at p. 531.)

We hasten to add that the trial court strictly limited admission of the section 1109(a) evidence to acts committed within one year prior of the charged offenses, which greatly reduced the potential for the evidence to mislead the jury or to consume an undue amount of time at trial. As such, we affirm the trial court's ruling as a proper exercise of its discretion. (*People v. Johnson, supra,* 185 Cal.App.4th at p. 533.)

And finally, given the totality of the record in this case, we conclude that, even assuming for the sake of argument admitting this evidence was a mistake, the decision resulted in no undue harm to defendant. Substantial other evidence, including defendant's own statements, established that, at minimum, he slapped L.V. and punched I.V. in the face on the day in question. In light of defendant's statements, his own counsel conceded to the jury that the evidence sufficed to prove the lesser included offenses of simple assault and child abuse. In addition, both victims had visible, serious injuries to their persons that required medical treatment. And, while the victims may have later denied or downplayed the seriousness of defendant's abuse, there was undisputed expert testimony that it is all too common for victims of domestic violence to later alter or recant their stories due to both emotional and situational factors. Based on this record, we conclude it is not reasonably probable the verdict would have been more favorable to defendant had the court not admitted the evidence of his prior acts of

---

[8] We need not address whether there are any hearsay concerns with respect to the court's admission of Officer Barkzi's testimony regarding J.V.'s statements to her on the date in question, as neither party has raised this issue on appeal.

9

domestic violence. (*People v. Livingston* (2012) 53 Cal.4th 1145, 1162-1163, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.) Accordingly, defendant's evidentiary challenge fails.

## II. Denial of Defendant's Motion to Designate His Wobblers as Misdemeanors.

Defendant also challenges the trial court's refusal to classify his so-called wobbler offenses as misdemeanors rather than felonies as an abuse of discretion and violation of his due process rights. We disagree.

" 'The Legislature has classified most crimes as *either* a felony or a misdemeanor, by explicitly labeling the crime as such, or by the punishment prescribed.' (*People v. Park* (2013) 56 Cal.4th 782, 789 [156 Cal.Rptr.3d 307, 299 P.3d 1263] (*Park*).) However, there is a special category of crimes that is punishable as either a felony or a misdemeanor, depending on the severity of the facts surrounding its commission. [Citation.] These crimes, referred to as 'wobbler[s],' are 'punishable either by a term in state prison or by imprisonment in county jail and/or by a fine.' (*Park*, at p. 789.) The conduct underlying these offenses can vary widely in its level of seriousness. Accordingly, the Legislature has empowered the courts to decide, in each individual case, whether the crime should be classified as a felony or a misdemeanor. In making that determination, the court considers the facts surrounding the offense and the characteristics of the offender. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978 [60 Cal.Rptr.2d 93, 928 P.2d 1171] (*Alvarez*).)"[9] (*People v. Tran* (2015) 242 Cal.App.4th 877, 885-886.)

---

[9] " ' "A wobbler offense charged as a felony is regarded as a felony for all purposes until imposition of sentence or judgment. [Citations.] If state prison is imposed, the offense remains a felony; if a misdemeanor sentence is imposed, the offense is thereafter deemed a misdemeanor. [Citations.]" ' [Citation.] The trial court has discretion to 'reduce a wobbler to a misdemeanor either by declaring the crime a misdemeanor at the time probation is granted or at a later time—for example, when the defendant has successfully completed probation.' [Citations.] Assault by means of force likely to produce great bodily injury is a wobbler. (Former § 245, subd. (a)(1); Stats. 2004, ch. 494, § 1, pp. 4040–4041.)" (*People v. Tran, supra,* 242 Cal.App.4th at p. 885.)

"When the court properly exercises its discretion to reduce a wobbler to a misdemeanor, it has found that felony punishment, and its consequences, are not appropriate for that particular defendant. [Citation.] . . . Such a defendant is not blameless. But by virtue of the court's proper exercise of discretion, neither is such defendant a member of the class of criminals convicted of a prior serious felony whom the voters intended to subject to increased punishment for a subsequent offense." (*People v. Park, supra,* 56 Cal.4th at pp. 801-802.)

A trial court's discretion in this context " 'is neither arbitrary nor capricious, but is an impartial discretion, guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. [Citations.]' [Citation.] 'Obviously the term is a broad and elastic one [citation] which we have equated with "the sound judgment of the court, to be exercised according to the rules of law." [Citation.]' [Citation.] Thus, '[t]he courts have never ascribed to judicial discretion a potential without restraint.' (*Ibid.*) 'Discretion is compatible only with decisions "controlled by sound principles of law, . . . free from partiality, not swayed by sympathy or warped by prejudice . . . ." [Citation.]' [Citation.] '[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' [Citation.] [¶] [O]n appeal, two additional precepts operate: 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.] [Citation.] Concomitantly, '[a] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.]' [Citation.]" (*Alvarez, supra,* 14 Cal.4th at pp. 977-978.)

In this case, having applied "the extremely deferential and restrained standard by which appellate courts are bound in these matters" (*Alvarez, supra*, 14 Cal.4th at p. 981),

11

we conclude the trial court did not abuse its discretion when denying defendant's motion. As the People point out, in challenging the trial court's ruling as an abuse of discretion and on due process grounds, defendant fails to identify a specific basis for reversal. Rather, defendant argues generally that the "constellation of facts" relating to both the charged offenses and his criminal history proves the court erred. In particular, defendant notes that his attacks on the victims were "momentary and intertwined with physical attacks by [them]," their injuries were "minor," his criminal history (which involved a 1996 conviction for misdemeanor domestic abuse) was "minimal," and he took immediate responsibility for his actions, telling Officer Barkzi upon his arrival, "I know I'm going to jail."

We conclude defendant's showing does not suffice to prove an abuse of discretion, much less constitutional error, as it fails to account for the multitude of other facts in the record weighing in favor of the trial court's discretionary decision. To name just a few such facts (most of which have already been discussed), defendant admitted to Officer Barkzi that he slapped L.V. and punched I.V.; both victims had visible, serious injuries requiring medical attention and told the officer that defendant had attacked them; both J.V. and L.V. acknowledged to Officer Barkzi that defendant had a history of abusing their family; and defendant's criminal history included yet another domestic violence offense involving an unrelated victim, indicating a pattern of domestic abuse spanning nearly 20 years. There is no doubt based on this evidence, which the trial court properly considered when reaching its decision, that no ground exists for reversal. (*People v. Tran, supra,* 242 Cal.App.4th at pp. 891-892 [trial court had discretion to deny defendant's motion to reduce his felony conviction for assault with force likely to produce great bodily injury to a misdemeanor where it properly considered the facts relating to his conviction, as well as information in his postplea probation report].)

As the *People v. Tran* court aptly noted under comparable circumstances, "[a] convicted defendant is not *entitled* to the benefits of section 17(b) as a matter of right. Rather, a reduction under section 17(b) is an act of leniency by the trial court, one that 'may be granted by the court to a seemingly deserving defendant, whereby he [or she]

may escape the extreme rigors of the penalty imposed by law for the offense of which he [or she] stands convicted.' [Citation.]" (242 Cal.App.4th at p. 892.) In this case, the trial court had valid grounds to decline to afford defendant such leniency.

## DISPOSITION

The judgment is affirmed.

_____
Jenkins, J.

We concur:


_____
McGuiness, P. J.


_____
Pollak, J.

13