Filed 12/11/24  P. v. Houston CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

  Plaintiff and Respondent,

v.

ROBERT HOUSTON,

  Defendant and Appellant.

E082522

(Super.Ct.No. FVI22002267)

OPINION

APPEAL from the Superior Court of San Bernardino County.  John P. Vander Feer, Judge.  Affirmed.

Law Offices of Zulu Ali & Associates and Zulu Ali for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Robert Houston and his wife, Jane Doe, had a tumultuous relationship involving numerous domestic violence incidents dating back to 2017.  In the

1

most recent incident, defendant got angry with Doe after seeing a text message from a man on her phone. Defendant choked her, hit her in the head and hit her leg with a metal baseball bat. Evidence of three prior incidents of domestic violence between Doe and defendant were admitted at trial pursuant to Evidence Code section 1109. Defendant was convicted of two counts of corporal injury of a spouse and violating a criminal protective order.

Defendant claims on appeal that the trial court abused its discretion by admitting the prior incidents of domestic violence pursuant to Evidence Code section 1109 as they were more prejudicial than probative pursuant to Evidence Code section 352.

**PROCEDURAL HISTORY**

Defendant was found guilty of two counts of corporal injury of a spouse or cohabitant (Pen. Code, § 273.5, subd. (a); counts 1 & 2). For both counts, the jury found true that in the prior seven years, defendant had suffered a domestic violence conviction (Pen. Code, § 273.5, subd. (f)(1)). In addition, the jury found defendant guilty of one count of violating a domestic violence protective order with a prior conviction (Pen. Code, § 166, subd. (c)(4); count 3). For counts 2 and 3, the jury found true that defendant personally used a deadly and dangerous weapon during the commission of the crime (Pen. Code, § 12022, subd. (b)(1)). Defendant was sentenced to six years to be served in state prison.

# FACTUAL HISTORY

## A.   PRIOR INCIDENTS

Doe married defendant in 2016.  On March 4, 2017, Doe and defendant were living in Rialto.  Their marriage was not going well and they had considered separating and defendant moving out.  On that day, defendant had been drinking and they were discussing how they would divide their property and money.  Defendant called Doe a "Bitch."  He complained he paid for everything, which was not true as she was working as a nurse.  They continued to argue and defendant grabbed her throat with both hands.  He applied pressure to her throat.  He threatened to kill her; she was in fear of her life.  They fell onto the bed and he hit her in the head.  She was able to get free and call the police.  After the incident, Doe's neck was swollen and she had a knot on her head.  Her finger was swollen and her wedding ring had to be cut off her finger.  After this incident, defendant convinced Doe that he was sorry and that he would not hurt her again.  She decided not to go through with the divorce.

On December 16, 2019, defendant and Doe were living in Barstow.  Defendant was drinking that day.  Doe needed to go to work so she got in her car that was parked in the garage.  Defendant followed her and told her he did not want her to take the car.  Defendant told her, "Bitch, get out of the car.  I helped pay for this car."  When she did not get out of the car, he grabbed a metal chair and started beating on the driver's side window with the chair.  There was another car in the garage and he hit the hood of that car with the metal chair.  Doe was able to drive away.

On February 1, 2020, Doe came home from work; she and defendant started arguing. They were in the garage, and defendant grabbed her throat and started choking her. She was able to hit him in the head and ran toward the house. They struggled over the door going into the house, but she was able to get it closed. She locked the door to keep him out because he threatened to "fuck" her up. Her face was swollen and she had a scratch on her neck after the incident.

B.      <u>CURRENT INCIDENT</u>

On August 10, 2022, Doe decided that she was going to leave defendant. She told defendant she planned to leave in the next week. Doe went to work and returned to the house. She tried to open the garage with her remote but it would not open. She parked in the driveway and went into the house. Defendant was home even though he was supposed to be at work. Defendant confronted her about having to pay for her phone. He demanded to see her phone. When she finally gave him the phone, he saw a text message from a man who called Doe "Sexy." Defendant immediately called her a "fucking bitch" and accused her of cheating on him. She tried to get the phone back but he told her she better not try to get it back. Defendant balled up his right hand and lifted up his arm like he was going to hit her. She tried to reach for the phone and he lunged at her throat. They fell onto the bed and he held her throat with one hand. She tried to get away and he hit her in the head.

Doe was able to get away and ran to the bathroom where they kept a metal baseball bat behind the door. Doe and defendant struggled over the bat but he got it away from her. She was able to grab her phone from off the floor. He told her to put the phone

4

down or he was going to hit her.  He hit her twice in the leg with the metal bat.  It hurt her so much that she had to let go of the phone.  Defendant threw Doe to the bed.  He put her into a chokehold and pressed hard against her neck.  She told him that she could not breathe but he pressed harder.[1]  When she stopped resisting, he let her go.  She still could not breathe and tried to get into the bathroom to get her inhaler.  She was gasping for air.  Defendant blocked her way into the bathroom.

Doe left the room and went to their laundry area to try to find her other inhaler.  Doe believed she passed out because she woke up on the floor.  When she woke up, defendant was still yelling about her cheating on him.  She was very weak but was able to make it into the garage.  She still could not breathe and had a tightening in her throat.  She found the phone in the garage and called the police.  She tried to speak but was having trouble getting the words out.

The 911 call was played for the jury.  She initially said, "Help.  Help."  She was unable to give the operator her address and was panting.  She was unable to form any words and coughed and grunted hard.  The police arrived.  Defendant told Doe to say she had asthma not to say they had been fighting.

Barstow Police Officer Eric Santos arrived at the house in response to Doe's 911 call.  Officer Santos knocked on the front door and defendant opened the door.  Officer Santos went inside the house and found Doe in the garage.  She was gasping for air and was crying.  She struggled to communicate.  Paramedics arrived and gave her oxygen.

---

[1] Doe began crying while testifying.

5

Doe had a mark on her neck. Doe was unable to talk to Officer Santos; she had to write notes to him.

Officer Santos was wearing a body camera and the footage was shown to the jury. Officer Santos asked Doe several questions but she was panting and made unintelligible responses. After receiving oxygen, she was able to provide short answers. She told Officer Santos that defendant tried to kill her. Defendant had put his arm around her neck in a chokehold. She passed out. He hit her leg with a baseball bat. Officer Santos did not observe any visible injuries on defendant.

Doe had a knot and bruise on her leg from defendant hitting her with the bat. She had a bruise on her arm and her left wrist where defendant had grabbed her. At the time of trial she still had pain in her leg, numbness, and tingling where he hit her with the bat. A certified domestic violence advocate testified about the cycle of violence in an abusive relationship.

Certified records of the convictions based on the 2017 prior and the 2020 prior were admitted into evidence. A certified record of the criminal protective order that was in place at the time of the August 10, 2022, incident was admitted.

Defendant presented no testimony.

**DISCUSSION**

Defendant contends the trial court abused its discretion by admitting evidence of his prior domestic violence convictions and incidents pursuant to Evidence Code section 1109. The introduction of the prior domestic violence acts evidence was more prejudicial

6

than probative under Evidence Code section 352, did not directly relate to the charges at hand, and likely misled the jury.

### A. ADDITIONAL FACTUAL HISTORY

Defendant's counsel brought a motion in limine prior to trial to exclude his prior domestic violence acts and convictions because their admission was not warranted under Evidence Code section 1109 and was barred by Evidence Code section 352 as their admission was unduly prejudicial. Defendant's counsel insisted the prior convictions would create substantial undue prejudice against defendant, would result in an undue consumption of time, would confuse the jury, and a mini-trial on the prior incidents of domestic violence would be required.

The People filed a trial brief seeking to admit evidence under Evidence Code section 1109. This included (1) a conviction on March 22, 2017, of corporal injury of a spouse or cohabitant within the meaning of Penal Code section 273.5, subdivision (a), (2017 prior); (2) an incident in 2019 in which defendant violated a criminal protective order, which resulted in a conviction (2019 prior); (3) an incident in 2016 when defendant beat Doe and caused an injury to her jaw (2016 prior) resulting in a conviction; and (4) an incident on February 1, 2020, where defendant grabbed Doe by the neck causing a bleeding scratch on her neck (2020 prior).

Prior to trial, the trial court addressed the admission of the prior domestic violence incidents and convictions. It noted that the People sought to admit the 2017 prior of corporal injury to a spouse and the 2019 prior conviction of violating a criminal protective order. The testimony would be elicited from Doe. The prosecutor expected

7

Doe to testify as to the 2017 prior that defendant told her he was going to kill her multiple times and choked her. He also held her arm behind her back and she screamed until defendant's son entered the room to stop defendant. The 2019 prior involved defendant hitting her car with a metal chair. The trial court noted that both prior convictions and current charges were domestic violence related. The trial court noted that the prejudice was "reduced" based on the priors being convictions as the jury was not tempted to convict on the current charges to punish defendant for the prior acts. The prior convictions had probative value in that one involved the same choking and both showed a pattern of domestic violence. The prior convictions were not too remote in time and would not cause an undue consumption of time. The trial court concluded that the prejudice did not outweigh the probative value. The two prior convictions were admissible under Evidence Code section 1109.

The trial court then addressed the uncharged prior domestic violence incidents, the 2016 prior, and the 2020 prior. The parties offered that for the 2016 prior, Doe would show a photograph of her swollen cheek caused by an injury defendant inflicted on her. The incident was never reported to the police and was not corroborated. The offer of proof on the 2020 incident was that Doe would testify defendant grabbed her neck and scratched her. The trial court recognized the issue that the admission of numerous incidents could become cumulative and that these last two incidents did not result in a conviction. The trial court addressed the cumulative prejudice of four incidents. It was concerned about the 2016 prior not being reported in prior cases. It determined under Evidence Code section 352, that the 2016 prior should not be admitted. However, the

8

2020 prior was properly admitted as it involved the same individuals, it was proximate in time to the other domestic violence incidents, and it had probative value.

Just prior to the trial beginning, the People sought to admit another prior under Evidence Code section 1109. Their offer of proof was the weekend prior to the current incident, on approximately August 6, 2022, defendant grabbed Doe by the neck and threw her on the bed. The following day he told her " 'We can do this the easy way or the hard way,' " which she took as a threat. Defendant's counsel noted that it was not a timely request. The trial court excluded the evidence finding it was untimely to request right before opening statements and was prejudicial to add another incident.

However, during the cross-examination of Doe, defendant's counsel elicited testimony about the incident the weekend prior to the current incident. Doe told defendant that she was leaving him. He grabbed her by the throat and threw her on the bed. His phone and their television were damaged during the incident.

The jury was instructed with CALCRIM No. 852A entitled Evidence of Uncharged Domestic Violence. It provided, " 'The People presented evidence that the defendant committed domestic violence that was not charged in this case, specifically, incidents of March 4th, 2017, December 16th, . . . 2019 . . . ; February 1st, 2020; and the weekend before August 10th, 2022. [¶] . . . [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence. [¶] Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not

9

that the fact is true. [¶] If the People have not met this burden of proof, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from the evidence that the defendant was disposed or inclined to commit domestic violence, and, based on that decision, also conclude[] that the defendant was likely to commit and did commit corporal injury to spouse. And violation of court order, domestic violence, prior convictions, as charged in Counts 1, 2 and 3. [¶] If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one fact to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of corporal injury to spouse, an[d] violation of court order, domestic violence, prior conviction. The People must still prove each charge and allegation beyond a reasonable doubt.' ”

The jury was also instructed with CALCRIM No. 852B entitled Evidence of Charged Domestic Violence. It provided, “The People presented evidence that the defendant committed the crime of corporal injury to spouse and violation of court order, domestic violence . . . [¶] . . . [¶] As charged in Counts 1, 2, and 3. [¶] If the People have proved . . . beyond a reasonable doubt that the defendant committed one or more of these crimes, you may, but are not required to conclude from that evidence that the defendant was disposed or inclined to commit domestic violence offenses. And based on that decision, also conclude that the defendant was likely to commit the other domestic violence offenses charged in this case. [¶] If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the

10

other evidence. It is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge an[d] allegation beyond a reasonable doubt.' "

B.     ANALYSIS

"[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1109, subd. (a)(1).) "Under Evidence Code section 1109, evidence of a prior act of domestic violence is admissible to prove the defendant had a propensity to commit domestic violence when the defendant is charged with an offense involving domestic violence." (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1114.) " '[T]he policy considerations favoring the exclusion of evidence of uncharged domestic violence offenses are outweighed in criminal domestic violence cases by the policy considerations favoring the admission of such evidence.' " (*People v. Hoover* (2000) 77 Cal.App.4th 1020, 1028.)

Domestic violence acts that are admissible under Evidence Code section 1109 evidence are still subject to exclusion under Evidence Code section 352. (*People v. Hoover*, *supra*, 77 Cal.App.4th at p. 1028.) "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "Evidence is not inadmissible under [Evidence Code] section 352 unless the

11

probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights. Our high court has emphasized the word 'substantial' in section 352. [¶] Trial courts enjoy ' "broad discretion" ' in deciding whether the probability of a substantial danger of prejudice substantially outweighs probative value.' " (*People v. Holford* (2012) 203 Cal.App.4th 155, 167-168.)

"An exercise of discretion under Evidence Code section 352 will be affirmed unless it was arbitrary, capricious, or patently absurd and the ruling resulted in a miscarriage of justice." (*People v. Winbush* (2017) 2 Cal.5th 402, 469; see also *People v. Holford*, *supra*, 203 Cal.App.4th at p. 168.)

Here, prior to trial, the trial court spent a considerable amount of time considering the admission of the Evidence Code section 1109 evidence. It first addressed the 2017 and 2020 priors, both of which resulted in convictions. Both convictions involved the same victim. The 2017 prior involved the same type of conduct of choking Doe. The 2020 prior involved defendant hitting Doe's car with a chair; she sustained no injuries. Doe briefly testified regarding these incidents, and the jury was advised that defendant had been convicted of the prior acts so there was no risk that the jury would seek to punish defendant for the previous acts in this case.

As for the uncharged incident, in 2020 defendant grabbed Doe's throat and choked her. As a result, she had a scratch on her neck. This incident did not result in a conviction, but this did not render it inadmissible under Evidence Code section 352. The incident was extremely similar to the current incident in that defendant choked Doe in both incidents. " 'The principal factor affecting the probative value of an uncharged act

12

is its similarity to the charged offense.' " (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274.) "[I]n domestic violence cases . . . similar prior offenses are 'uniquely probative' of guilt in a later accusation." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 532.) Further, the admission of the 2020 prior did not involve an undue consumption of time at trial and did not mislead the jury.[2]

Additionally, the prior convictions and uncharged incident were not more inflammatory than the current incident. Although in 2017, defendant threatened to kill Doe, she only had a swollen neck after the incident. In 2019, Doe suffered no injuries and in 2020 she had a scratch on her neck. Here, Doe was choked so hard she could not breathe and was gasping for air. She had a bruise and permanent injury to her leg from defendant hitting her with the metal bat. Doe believed that defendant was trying to kill her. The trial court understood the potential prejudice of the admission of the two prior convictions and the 2020 uncharged incident but exercised its discretion to admit the evidence based on its probative value to the instant case. Such admission was not an abuse of the trial court's discretion.

Defendant states in his opening brief that the trial court's "failure to bifurcate the trial further compounded this error." Defendant provides no legal authority or further clarifying argument for his claim. "Where a point is merely asserted by counsel without

---

[2] We need not consider the admission of the incident occurring in August 2022 as defendant elicited such testimony during cross-examination despite the trial court agreeing to exclude it prior to trial.

any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion." (*People v. Dougherty* (1982) 138 Cal.App.3d 278, 282.)

Finally, even if we considered that the trial court erred by admitting the prior acts of domestic violence, it is not reasonably probable the jury would have reached a more favorable result without the evidence. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Initially, the trial court gave the jury instructions on how to view the evidence of the prior uncharged act of domestic violence and the prior convictions of domestic violence. The jury was informed it could not convict defendant based solely on the prior domestic violence. It was advised that the prior convictions and incidents were only one factor to consider along with all the other evidence. Each charge in the current case had to be proven beyond a reasonable doubt. We presume the jury followed the instructions and found defendant guilty based on the evidence presented as to the current incident. (*People v. Wilson* (2023) 89 Cal.App.5th 1006, 1014 [" 'We "presume" [jurors] generally understand and follow the instructions' "].)

Further, the evidence of the current incident strongly supported the jury's verdict. Doe immediately called the police once she was able to locate her phone. She was gasping for air and crying when Officer Santos arrived at their house. She was unable to talk to Officer Santos until she was given oxygen. Doe advised Officer Santos that she believed defendant was trying to kill her. Doe had visible injuries on her neck and a bruise on her leg where defendant hit her with the baseball bat. Defendant had no visible injuries despite his defense being he only acted in self-defense. It is not reasonably

14

probable that defendant would have obtained a more favorable result absent the evidence of the prior domestic violence convictions and incident.

## **DISPOSITION**

The judgment is affirmed in full.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:

RAMIREZ _____

P. J.

RAPHAEL _____

J.